UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
CONNECTICUT

| | |
|---|---|
| DISABILITY RIGHTS CONNECTICUT, INC., <br><br> Plaintiff, <br><br> v. <br><br> CONNECTICUT DEPARTMENT OF CORRECTION, and ANGEL QUIROS, in his official capacity as the Commissioner of the Connecticut Department of Correction, <br><br> Defendants. | Civil Action No. <br><br> May 12, 2023 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## I.  INTRODUCTION

1.      Plaintiff Disability Rights Connecticut ("DRCT"), the federally designated

Protection and Advocacy ("P & A") system for the State of Connecticut, brings this action to

enforce its rights under federal law under the Protection and Advocacy for Individuals with

Mental Illness ("PAIMI") Act, 42 U.S.C. § 10801, *et seq*., as amended, and its implementing

regulations, 42 C.F.R. §51.2, the Developmental Disabilities Assistance and Bill of Rights Act of 2000

("PAIDD Act"), 42 U.S.C. § 15041, *et seq*.; the Protection and Advocacy for Individual Rights ( "PAIR")

Act, 29 U.S.C. 794e; and the Protection and Advocacy for Traumatic Brain Injuries ("PATBI

Act"), 42 U.S.C.  § 300d-53 *et seq*. (collectively, the "P&A Acts") seeking declaratory and

injunctive relief to enjoin Defendants from continuing to violate DRCT's federal access

authority thereby impeding DRCT's ability to fulfill its federal mandate.  Specifically, this

lawsuit seeks relief from Defendants interference with DRCT's federal access authority and ability to fulfill its mandates under the P & A Acts with respect to: 1) access to records to investigate sexual assault of women incarcerated at Defendants' York Correctional Institution (C.I.); 2) access to records to investigate neglect of individuals with mental illness residing throughout Defendants' correctional facilities; and 3) unrestricted phone access to individuals with disabilities incarcerated throughout Defendants' correctional facilities.

2.      Plaintiff DRCT brings this action under the PAIMI Act and its implementing regulations and 42 U.S.C. § 1983 for an order to obtain access to records to investigate complaints, and DRCT's determination that there is probable cause to believe that women with serious mental illness who are incarcerated at Defendants' York C.I. are being subjected to sexual abuse and neglect.

3.      Plaintiff DRCT also brings this action under the PAIMI Act and its implementing regulations and 42 U.S.C. § 1983 for an order to obtain access to records to investigate complaints, and DRCT's determination that there is probable cause to believe that and that individuals with serious mental illness throughout Defendants prison system have been neglected with respect to the provision of mental health treatment.

4.      Plaintiff DRCT also brings this action to enforce its rights under federal law pursuant to the PAIMI Act, the PAIDD Act, the PAIR Act; and the PATBI Act, and their respective implementing regulations as well 42 U.S.C. § 1983 to have unrestricted phone access to persons with disabilities who are incarcerated at Connecticut's prisons operated by Defendants Connecticut Department of Correction (DOC) and Commissioner Angel Quiros.

5.      DRCT has been designated by the Governor of Connecticut as Connecticut's federally mandated protection and advocacy system pursuant to the federal P & A Acts and their respective implementing regulations. *See* C.G.S. § 46a-10a *et seq.*

6.      Defendants Connecticut Department of Correction ("DOC") and Commissioner Angel Quiros ("Quiros"), in his official capacity as Commissioner of the DOC, have, and continue to, unlawfully deny access to the records related to the sexual abuse and neglect of individuals incarcerated at DOC's prisons, and restricted DRCT's ability to have phone access to prisoners with disabilities at Defendants' correctional facilities.

7.      Defendants have, and continue to, unlawfully delay and/or deny DRCT's access to crucial records that DRCT needs to fulfil its federal mandate under the PAIMI Act to conduct a full investigation of complaints received by DRCT, and DRCT's probable cause belief, that individuals with mental illness incarcerated at DOC's women's correctional facility, York CI, have been or may be at significant risk of being subjected to sexual abuse or neglect.  These crucial records include: 1) redacted investigative reports of alleged inmate victims who have been sexually abused; 2) a record known as a "staffing plan" that the DOC must create and implement to monitor incidents of inmate sexual abuse and neglect; and 3) an unredacted Excel spreadsheet containing the names and housing locations of the victims of alleged sexual assault, and related information.

8.      Defendants also have, and continue to, unlawfully delay and/or deny DRCT's access to crucial records that DRCT needs to fulfil its federal mandate under the PAIMI Act to conduct a full investigation of complaints received by DRCT, and DRCT's probable cause belief, that individuals with serious mental illness incarcerated at DOC's are being neglected with respect to the provision of inadequate mental health treatment.  These records include:  1) provision of staffing data showing the number of correctional, medical, and mental health staff available to provide treatment and care for inmates with serious mental illness incarcerated at Defendants' correctional facilities, and 2) records of corrective action the DOC has taken, or is

required to take, to ensure adequate treatment and care for inmates who have serious mental illness who are incarcerated in Defendants' correctional facilities.

9.       Additionally, Defendants have, and continue to, unlawfully deny DRCT's requests for unaccompanied access to communicate with incarcerated individuals with disabilities by denying incarcerated individuals with disabilities in Defendants' custody the ability to make unrestricted and unrecorded phone calls to DRCT.

10.     Defendants' actions, inactions, and omission, unlawfully interfere with DRCT's federal mandate to provide protection and advocacy services to people with disabilities in the Defendants' custody in violation of the P & A Acts.

11.     Plaintiffs have attempted in good faith to resolve the issues complained of herein with Defendants, but these efforts have been unsuccessful.

12.     DRCT brings this action for declaratory and injunctive relief to obtain access to crucial records and ensure phone access to DRCT for persons with disabilities in Defendants' custody.


II.     **JURISDICTION AND VENUE**

13.     This is a civil action authorized by 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights, privileges, and immunities guaranteed by federal laws and the U.S. Constitution.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

14.     Plaintiff's causes of action also arise under the PAIMI Act, 42 U.S.C. § 10801 *et seq*.; DD Act, 42 U.S.C. § 15041 *et seq*.; PAIR Act, 29 U.S.C. § 794e; PATBI Act, 29 U.S.C.

§ 3001 *et seq.* This Court has jurisdiction over these claims.

15. This Court has the authority to grant declaratory and injunctive relief under 28 U.S.C. § 2201 and § 2202, and 42 U.S.C. § 1983, and for fees and costs under 42 U.S.C. § 1988.

16. Venue is proper in the District of Connecticut under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims in this lawsuit occurred in this District.

## III.   **PARTIES**

### A. **Plaintiff Disability Rights Connecticut**

17. Disability Rights Connecticut (DRCT) is a private, nonprofit corporation organized under the laws of Connecticut. DRCT is designated by the Governor of Connecticut as the protection and advocacy system in Connecticut under the P & A Acts and their respective implementing regulations. DRCT's office is located at 75 Charter Oak Avenue, Ste. 101-1, Hartford, Connecticut 06106 and conducts its business throughout the state of Connecticut. DRCT is the successor entity to the State of Connecticut Office of Protection and Advocacy for Persons with Disabilities ("OPA"). C.G.S. § 46a-10a *et seq.*

18. DRCT is a part of a nationwide network of disability rights agencies established by Congress and authorized to: (1) investigate incidents of abuse and neglect of persons with disabilities; (2) pursue administrative, legal, and other appropriate remedies on their behalf; and (3) provide information and referrals relating to programs and services addressing the needs of persons with disabilities.

19. DRCT has authority under federal law to gain broad access to facilities, individuals, and their records in order to detect, investigate, and prevent abuse and neglect or

rights violations of individuals with disabilities.

20. DRCT is allotted federal funds pursuant to PAIMI, PAIDD, PAIR, and PATBI Acts and is thereby obligated to provide protection and advocacy for persons with mental illness, developmental disabilities, and other individuals with disabilities who are not eligible under the PAIMI Act or the DD Act.

21. Congress established the protection and advocacy (P&A") system in 1975—initially to provide protection and advocacy of individuals with intellectual and developmental disabilities—with the enactment of the DD Act which was reauthorized in 2000 under 42 U.S.C. § 15041, *et seq*. Congress expanded the authority of protection and advocacy systems to include individuals with mental illness residing in facilities, including individuals with mental illness residing in jails and prisons, when it enacted the PAIMI Act in 1986 at 42 U.S.C. § 10801, *et seq*. Congress amended the PAIMI Act in 2000 to expand the protection and advocacy's authority to provide protection and advocacy for individuals with mental illness living in the community. 42 U.S.C. §10801. The PAIR Act was created to protect the rights of all other individuals with disabilities who are not covered under the PAIDD and PAIMI Acts. 29 U.S.C. § 794e *et seq*. Additionally, the PATBI Act, 42 U.S.C. § 300d-52, was enacted specifically to provide the P & As with funding to specifically protect individuals with traumatic brain injuries. 42 U.S.C. § 300d-52. The PAIR and PATBI Acts adopt the regulations of the PAIDD Act.

22. Pursuant to the P&A Acts, Plaintiff DRCT has a federal mandate to protect and advocate for the rights of persons with disabilities in Connecticut, including prisoners and pretrial detainees who are incarcerated in DOC facilities. Among other activities, Plaintiff DRCT investigates complaints of abuse and neglect, and DRCT's determination that there is

probable cause to belief that individuals with disabilities in facilities, including prisons, have been or may be at significant risk of being subjected to abuse or neglect.

## B. Defendants

### Defendant Department of Correction

23.     Defendant DOC is established pursuant to Connecticut General Statute §18-78.

24.     Defendant DOC is located at 24 Wolcott Hill Road Wethersfield, CT 06109.

### Defendant Angel Quiros

25.     Defendant Angel Quiros is the Commissioner of the DOC.  Defendant Quiros is sued in his official capacity as the Commissioner of the DOC.

26.     Defendant Quiros is responsible for the operation and administration of DOC. C.G.S. § 18-80.

27.     Defendant Quiros maintains his offices at 24 Wolcott Hill Road Wethersfield, CT 06109.

28.     Defendants manage and operate correctional facilities in Connecticut.

29.     Defendants' correctional facilities are "facilities" as defined in the PAIMI Act. 42 U.S.C. § 10802(3).

30.     Defendants' correctional facilities are "service providers" under the DD Act and PAIR Act because they are locations where services, supports, and other assistance are provided to persons with disabilities.  42 U.S.C. § 15043(a)(2)(H); 29 U.S.C. § 794e(f)(2).

31.     Defendants' correctional facilities are "locations" under the DD Act as their facilities provide services, supports, and other assistance  to individuals with disabilities,

including the individuals who are referred to in this Complaint. 42 U.S.C. § 15043(a)(2)(H).

32. Defendant DOC confines inmates with disabilities in its correctional facilities.

33. Inmates in the custody of the DOC receive care, treatment, services, supports, including, but not limited to: screening, evaluation, counseling, behavioral therapies, medication treatment and supervision.

## IV. FACTUAL ALLEGATIONS

### A. Protection and Advocacy Acts-Relevant Federal Statutory and Regulatory Overview

**DRCT's Authority to Investigate Abuse and Neglect of Individuals with Mental Illness Under the PAIMI Act and Its Implementing Regulations**

34. The P & A Acts, including the PAIMI Act, authorize designated protection and advocacy systems such as DRCT, to conduct a "full investigation" when it receives complaints of abuse and/or neglect, or has probable cause to believe that abuse and/or neglect has occurred. 42 U.S.C. §10805(a)(1)(A)-(B); 42 C.F.R. §51.2.

35. The term "abuse" under the PAIMI Act and its implementing regulations is defined as "any act or failure to act by an employee of a facility rendering care or treatment which was performed, or which was failed to be performed, knowingly, recklessly, or intentionally, and which caused, or may have caused injury to an individual with mental illness including rape or sexual assault; verbal, nonverbal, mental and emotional harassment; and any other practice likely to cause immediate physic al or psychological harm or long-term harm if such practice continues." 42 U.S.C. §10802(1); 42 C.F.R. §51.2.

36. The term "neglect" is defined by the PAIMI Act and its implementing regulations as "an act or omission by an individual responsible for providing services in a

facility rendering care and treatment which caused or may have caused injury or placed an individual with mental illness at risk of injury. An act or omission includes failure to establish or carry out an appropriate individual program or treatment plan, failure to provide appropriate health care, or failure to provide a safe environment for an individual with mental illness including the failure to maintain adequate numbers of appropriately trained staff." 42 U.S.C. §10802(5); 42 C.F.R. §51.2.

37.     The term "probable cause" means "reasonable grounds for the belief that an individual with mental illness has been or may be at significant risk of being subjected to abuse or neglect. The individual making a probable cause determination may base the decision on reasonable inferences drawn from his or her experience or training regarding similar incidents, conditions or problems that are usually associated with abuse or neglect. 42 C.F.R. §51.2.

38.     A "full investigation" entitles the P&A system, based on complaints probable cause, to access facilities and records necessary for the P&A to make a determination about whether an allegation of abuse or neglect is taking place or has taken place. 42 C.F.R. §51.2. Engaging in a full investigation allows the P&A to participate in effective advocacy as Congress intended. *Alabama Disabilities Advoc. Prog. v. J.S. Tarwater Developmental Ctr.*, 894 F.Supp. 492, 497 (11th Cir. 1996)("It is clear that the Act provides express authority for P & As to gain broad access to records, facilities, and residents to ensure that the Act's mandates can be effectively pursued."); *Mississippi v. Cotten*, 929 F.2d 1054, 1059 (5th Cir. 1991)(asserting that P&As must conduct full investigations of abuse and neglect in order to engage in effective advocacy for individuals with disabilities under their federal statutory mandate).

**Access to Records Under the PAIMI Act**

39.    The P&A Acts authorize the designated P&A system, under appropriate circumstances, to have access to records of persons with disabilities, including persons with serious mental illness. 42 U.S.C. § 10805(a); 42 C.F.R.§ 51.41.

40.    As the designated P&A system for the State of Connecticut, DRCT's federal authority to access records under the PAIMI Act and its implementing regulations includes, but is not limited to:

   a. All records of any individual with a mental illness, or their legal representative who have authorized DRCT to access their records. 42 U.S.C. § 10805(a)(4)(A), 42 C.F.R. §51.41(b)(1);

   b. All records of any individual with a mental illness if: (1) the individual cannot authorize access due to his or her mental or physical state; (2) the individual does not have a legal guardian or legal representative; and (3) DRCT has received a complaint about the individual's treatment or DRCT has determined there is probable cause to believe said individual has been subject to abuse or neglect. 42 U.S.C. § 10805(a)(4)(B); and

   c. All records of an individual with a mental illness who has died or whose whereabouts are unknown. 42 U.S.C. § 10805(a)(4)(B),

41.    The PAIMI Act and its implementing regulations define the term "records" as information and individual records whether written or in another medium, draft or final, including handwritten notes, electronic files, photographs or video or audio tape records, which shall be available to the P&A system under the Act shall include, but not be limited to:

a. Information and individual records, obtained in the course of providing intake, assessment, evaluation, supportive and other services, including medical records, financial records, and reports prepared or received by a member of the staff of a facility or program rendering care or treatment. This includes records stored or maintained in locations other than the facility or program as long as the system has obtained appropriate consent consistent with section 105(a)(4) of the Act.

b. Reports prepared by an agency charged with investigating abuse neglect, or injury occurring at a facility rendering care or treatment, or by or for the facility itself, that describe any or all of the following:

   i.   Abuse, neglect, or injury occurring at the facility;

   ii.  The steps taken to investigate the incidents;

   iii. Reports and records, including personnel records, prepared or maintained by the facility, in connection with such reports of incidents; or

   iv.  Supporting information that was relied upon in creating a report, including all information and records used or reviewed in preparing reports of abuse, neglect or injury such as records which describe persons who were interviewed, physical and documentary evidence that was reviewed, and the related investigative findings.

c. Discharge planning records;

d. Reports prepared by individuals and entities performing certification or licensure reviews, or by professional accreditation organizations, as well as related assessments prepared for the facility by its staff, contractors or related entities, except that nothing in this section is intended to preempt State law protecting records produced by medical care evaluation or peer review committees; and

e.  Professional, performance, building or other safety standards, demographic and statistical information relating to the facility. 42 C.F.R. §51.41(c).

42.  DRCT is entitled to access draft or final documents, including handwritten notes, electronic files, photographs, or video or audio tape records. 42 C.F.R. § 51.41(c).

43.  The P&A Acts' access authority allows DRCT access to reports and records prepared by an agency charged with investigating incidents of abuse, neglect, injury, or death of an individual with a mental illness, or any other disability. 42 U.S.C. § 10806(a)(3)(A).

44.  DRCT is entitled, pursuant to the P&A Acts and its implementing regulations, access to the following records maintained by DOC, including, but not limited to:

a.  documents regarding the steps taken to investigate the incidents;

b.  reports and records, including personnel records;

c.  supporting information that was relied upon in creating a report, including all information and records used and reviewed in preparing reports;

d.  records that describe persons who were interviewed;

e.  physical and documentary evidence that was reviewed;

f.  related investigative findings;

g.  reports prepared by individuals and entities performing certification or licensure reviews, related assessments prepared for the DOC by its staff, contractors or related entities; and

h.  professional, performance, building or other safety standards, demographic and statistical information retained by the DOC. 42 C.F.R. § 51.41(c).

45.  DRCT is further entitled to reports prepared by any DOC staff rendering care and treatment or reports prepared by an agency charged with investigating reports of incidents

of abuse, neglect, and injury occurring at such facility that describe incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents. 42 U.S.C. §10806(b)(3)(A).

46.     The PAIMI Act's implementing regulations require that access to these records be provided promptly. 42 C.F.R. § 51.41(a), (e).

47.     If DRCT's access to records is delayed or denied, DRCT must be provided with a written statement of reason for the delay or denial. 42 C.F.R. § 51.43.

**Access to Residents**

48.     Under the P & A Acts and their implementing regulations, P&As have broad access authority to enter facilities and to speak to residents. 42 U.S.C. §§10805(a)(2)-(a)(3); 42 U.S.C. §15043(H); 29 U.S.C. § 794e; and 42 U.S.C. § 300-53.

49.     This authority extends to reasonable unaccompanied access to public and private facilities and programs in the State which render care or treatment for individuals with disabilities, and to all areas of the facility, including jails and prisons, which are used by residents or are accessible to residents. 42 C.F.R. §51.42(b); 45 C.F.R. §1326.27(b)(2).

50.     Unaccompanied access to residents shall include the opportunity to meet and communicate privately with individuals regularly, both formally and informally, by telephone, mail and in person. Residents include minors or adults who have legal guardians or conservators. 42 C.F.R. §51.42(d); 45 C.F.R. §1326.27(d).

51.     Access to residents allows the P&A to comply with its mandate to provide "information and training on, and referral to programs addressing the needs of individuals with mental illness, and information and training about individual rights and the protection and advocacy services available from the P&A  system, including the name, address, and telephone

number of the P&A system. 42 C.F.R. §51.42(c)(1); 45 C.F.R. §1326.27(c)(2).

52.     This reasonable unaccompanied access involves reasonable times, which at a minimum shall include normal working hours and visiting hours. 42 C.F.R. §51.42(c); 45 C.F.R. §1326.27(c).

**Denial of Records**

(i)  Denial of DRCT's Records Request Regarding Investigative Reports of Sexual Abuse Victims

53.     On April 14, 2021, pursuant to its federal authority under the PAIMI Act, DRCT began investigating a complaint that a woman with a serious mental illness incarcerated at York Correctional Institution (York CI), Connecticut's correctional institution for woman, was sexually assault by a corrections officer.

54.     In the course of conducting its investigation of the sexual assault of the woman at York, DRCT received two additional complaints about other sexual assaults of women with mental illness at York C.I.

55.     During this investigation, DRCT also learned that the DOC does not generally provide sexually assaulted inmates with mental illness with necessary mental health treatment, including qualified sexual assault counselors to provide the requisite counseling and mental health services.

56.     Based upon the complaints of sexual assaults it received, prison visits that DRCT conducted during its ongoing investigation, as well as the experience, education and knowledge of DRCT staff, DRCT's staff determined that they had probable cause under the PAIMI Act and its implementing regulations that women with mental illness incarcerated at the DOC have been or may be at significant risk of being subjected to sexual abuse or neglect.

57. As a result of the probable cause determination that there may be systemic sexual abuse at DOC, DRCT staff decided to investigate this possible abuse. Therefore, on December 15, 2022, DRCT requested access to the names and inmate numbers of individuals for whom the DOC had received allegations of sexual abuse and/or neglect from 2019 – 2022.

58. The DOC denied DRCT access to this information on February 6, 2023.

59. On February 14, 2023, as part of its investigation, DRCT requested that DOC provide it with access to all of DOC's sexual abuse investigative reports for the period of 2019 through the present with inmate names and numbers redacted. DRCT estimated that there were approximately 100 such reports but requested that the DOC clarify how many reports existed for the period of 2019 to the present. At that time, DRCT also requested that DOC produce the reports to DRCT on a weekly rolling basis.

60. On February 24, 2023, without a response from the DOC, the DRCT attorney assigned to the investigation sent an email to Defendants, through their attorney, requesting a response to DRCT's February 14, 2023 request for redacted sexual abuse investigative reports.

61. On March 3, 2023, the DOC agreed to release redacted reports to DRCT, but did not clarify how many reports existed or when DRCT would receive them.

62. On March 8, 2023, DRCT received an email from a DOC different attorney, Attorney Nancy O'Brasky, who was assigned to address outstanding DRCT access requests. In response, DRCT requested an update on the redacted investigative reports and for the DOC to propose a schedule by which they would release these reports on a rolling basis by 5 pm on Friday March 10, 2023.

63. On March 10, 2023, the DOC emailed that they were unable to comply with DRCT's requests. The DOC did not provide the requested reports, a proposed release schedule,

or a written explanation for the delay.

64. On March 14, 2023, DRCT requested that DOC provide a written explanation for the delay. The DOC stated that the new DOC attorney needed time to understand DRCT's requests. At this time, a month had lapsed since DRCT's request for the redacted investigative reports.

65. On March 29, 2023, DRCT provided the DOC with a letter via email summarizing its outstanding access requests including the redacted investigative reports of sexual abuse and neglect victims at York C.I., requesting that the DOC respond by 5 pm Friday April 6, 2023. The DOC responded that the attorney assigned to address DRCT requests had a family emergency. DRCT provided a week extension to 5 pm Friday April 14, 2023.

66. On Friday April 14, 2023, the DOC provided documents to DRCT. None of these documents included the redacted sexual abuse and neglect investigative reports.

67. On May 1, 2023, DRCT sent the DOC a letter via email once more requesting, *inter alia,* the redacted investigative reports. The DOC did not respond to this most recent request.

68. Despite its repeated requests to obtain the redacted investigative reports, Defendants have not provided DRCT with the redacted investigative reports of sexual abuse for the period of 2019 through the present.

69. Defendants' failure to provide the redacted investigative reports have, and continue to impair and irreparably harm DRCT's ability to fulfill its statutory mandate and to conduct a full investigation of sexual abuse of female prisoners with serious mental illness at York C.I.

### (ii) P&A Records Request Regarding Excel Spreadsheet Tracking Statuses of Investigative Reports of Sexual Abuse Victims

70.     On November 17, 2022, DRCT staff visited York CI as part of its ongoing investigation into sexual abuse of prisoners with mental illness.  During that visit, DRCT staff learned that a DOC staff member maintained an excel spreadsheet tracking the status of investigations of sexual abuse and neglect of prisoners.

71.     On December 15, 2022, DRCT requested that Defendants provide this spreadsheet unredacted no later than within three business days.

72.     Plaintiff DRCT agreed to accept a redacted version of the spreadsheet with inmate information removed, which the DOC provided to DRCT on March 3, 2023.

73.     After review of the spreadsheet, DRCT made a new record request for four (4) unredacted investigative reports listed on the spreadsheet on March 13, 2023.

74.     The DOC provided those reports to DRCT on April 18 and 19, 2023.

75.     Following the review of those four reports, DRCT determined that, based on its knowledge and experience during this investigations, and other past investigations of sexual abuse and neglect, there was further probable cause to believe that the women with serious mental illness incarcerated at Defendants' correctional facilities has been or may be at significant risk of being subjected to sexual abuse or neglect and therefore, DRCT needed to further investigate the inmate information redacted in the spreadsheet.  As a result of this probable cause determination, DRCT made a record request on April 21, 2023 for an unredacted version of the spreadsheet the DOC previously provided.

76.     On April 25, 2023, the DOC denied DRCT's access request to the unredacted spreadsheet. The DOC invited DRCT to draft its own memo encouraging sexual abuse and neglect victims to contact DRCT directly, which the DOC offered to post publicly. On April 26, 2023, DRCT declined to accept this offer, stating that the offer interfered with its ability to conduct a full investigation under 42 C.F.R. §51.2 and to maintain confidentiality with interviewed individuals during its investigation pursuant to 42 C.F.R. §51.45.

77.     Defendants' failure to provide the unredacted spreadsheet has, and continues to, impair and irreparably harm DRCT's ability to fulfill its statutory mandate and to conduct a full investigation of sexual abuse of female prisoners with serious mental illness at York C.I.

(iii) <u>P&A Records Request Regarding the Report Monitoring Sexual Abuse Incidents and Safeguarding of Sexually Abused Victims ("Staffing Plan")</u>

78.     In the fall of 2022, while continuing to investigate sexual abuse of individuals with mental illness, DRCT staff learned that the DOC was required, under the Prison Rape Elimination Act (PREA), 28 U.S.C. §115.13, to retain and implement a document outlining how each DOC facility monitors, supervises, and provides protection and care for individuals sexually abused or neglected known as a "staffing plan." Under PREA, each DOC facility must also have its own staffing plan.

79.     The staffing plan specifically requires inclusion of information relevant to the DOC's responsibility to safeguard inmates from sexual abuse and neglect including findings of inadequate protection of victims, blind spots in a video cameras' capacity to record areas in a facility to prevent sexual abuse and neglect, and the prevalence of substantiated and unsubstantiated incidents of sexual abuse.

80.    In order for DRCT to conduct a full investigation to determine whether there has been, and whether there currently is, systemic sexual abuse and neglect of women with serious mental illness incarcerated in Defendants' correctional facilities, DRCT needs to review the information contained in the "staffing plan."

81.    On December 15, 2022, DRCT made a record access request for this staffing plan.

82.    Over the course of two months between January and February of 2023, DRCT and the DOC corresponded over email regarding DRCT's access to the staffing plan.

83.    During these negotiations, DRCT reiterated to the DOC that it needs the staffing plan conduct its own full investigation to determine whether abuse and/or neglect has occurred.

84.    On March 3, 2023, the DOC denied DRCT access to the staffing plan in an email to DRCT.

85.    On March 8, 2023, DRCT received an email from the DOC stating that a different DOC attorney, Nancy O'Brasky, was assigned to address DRCT outstanding access requests. That same day, DRCT requested a written explanation from the DOC as to why it denied DRCT access to the staffing plan by 5 pm Friday March 10, 2023.

86.    On March 10, 2023, the DOC responded via email that it was unable to respond by DRCT's requested time frame as the new attorney needed time to review DRCT's request for the staffing plan.

87.    On March 29, 2023, DRCT sent the DOC a letter via email summarizing outstanding DRCT access requests including the staffing plan, requesting a response by 5 pm Friday April 6, 2023.

88.     The DOC responded, through Attorney O'Brasky, that, due to a family emergency, it could not respond by April 6, 2023.

89.     In response, DRCT extended its deadline to 5 pm Friday April 14, 2023.

90.     Although the DOC provided documents on April 14, 2023, this response did not include neither the staffing plan nor a written explanation for a delay or denial.

91.     On May 1, 2023, DRCT sent the DOC one more letter requesting, *inter alia*, the staffing plan.

92.     The DOC has not responded to this request.

93.     Defendants' failure to provide the staffing plan has, and continues to, impair and irreparably harm DRCT's ability to fulfill its statutory mandate and to conduct a full investigation of sexual abuse of female prisoners with serious mental illness at York C.I.


(iv) <u>P&A Records Request Regarding Staffing Levels and Staff Training for Treatment and Care of Sexual Abuse Victims with Mental Illness</u>


(a) Records Regarding Staffing to Provide Mental Health Care and Related Information

94.     During the course of DRCT's investigation of neglect of prisoners with mental illness in Defendants' custody with respect to the provision of mental health treatment, DRCT staff conducting the investigation determined that in order to conduct a full investigation it was necessary to obtain records from Defendants regarding staffing levels and related information regarding individuals providing mental health care at the DOC's correctional facilities.

95.     On January 20, 2023, DRCT made a record request regarding staffing data including the number of correctional, medical, and mental staff present at each facility;

documentation of the shifts of each DOC staff member; job descriptions of each DOC staff members; the number and which type of position remains vacant at the DOC; and the full names and respective job titles for all DOC staff members.

96.     On February 16, 2023, the DOC provided DRCT with documentation listing the number of correctional, medical and mental health staff by DOC facility.

97.     On March 8, 2023, DRCT emailed the DOC requesting an update on outstanding staffing documents not provided on February 16, 2023.

98.     On March 29, 2023, DRCT made yet another attempt to request outstanding staffing documentation, requesting this information by 5 pm Friday April 6, 2023.

99.     The DOC responded that, due to a family emergency, it could not respond by April 6, 2023.

100.    In response, DRCT extended its deadline to 5 pm Friday April 14, 2023.

101.    Although the DOC provided documents on April 14, 2023, this response did not include outstanding staffing data or a written explanation for a delay or denial.

102.    On May 1, 2023, DRCT sent the DOC one more letter requesting, *inter alia*, the outstanding staffing documents.

103.    The DOC has not responded to DRCT's requests for documentation of the shifts of each DOC staff member; job descriptions of each DOC staff members; the number and which type of position remains vacant at the DOC; and the full names and respective job titles for all DOC staff members.

104.    Defendants' failure to provide the requested documentation of staffing statistics and data regarding individuals providing mental health care has, and continues to, impair and

irreparably harm DRCT's ability to fulfill its statutory mandate to conduct a full investigation of neglect of prisoners with serious mental illness in Defendants' custody.

(b) Records Regarding Amount and Quality of Mental Health Care

105.    As DRCT's neglect investigation regarding the adequacy of mental health treatment and care continued, DRCT learned that several reports existed detailing issues with the amount and quality of mental health care individuals were receiving while incarcerated at Defendants' correctional facilities.

106.    These reports set forth how the DOC defined the severity level of an individual's mental illness and improvements the DOC must make to the quality and amount of mental health care.

107.    On February 7, 2023, DRCT made a record request for the following records: documentation defining which inmates were classified on a metal health score scale of 1-5 by DOC facility; plans of correction for reports entitled "Inmate Medical Services Assessment from Health Management Associates" and "Investigation of Manson Youth Institution"; an audit completed by the National Commission on Correctional Health Care in February 2022; and documentation explaining what standard the DOC relies upon to define caseloads per week for mental health staff.

108.    On April 14, 2023, DRCT received two responsive documents – a table identifying which inmates were classified on a metal health score scale of 1-5 by DOC facility, and an audit completed by the National Commission on Correctional Health Care in February 2022 at Osborn Correctional Institution.  The DOC did not provide DRCT with the requested plans of correction for reports entitled "Inmate Medical Services Assessment from Health Management Associates" and "Investigation of Manson Youth Institution"; an audit completed

by the National Commission on Correctional Health Care in February 2022; and documentation explaining what standard the DOC relies upon to define caseloads per week for mental health staff.

109.     On May 1, 2023, DRCT sent another letter to the DOC requesting the outstanding records by 5 p.m. Friday May 5, 2023.

110.     The DOC has neither responded to, nor provided plans of correction for reports entitled "Inmate Medical Services Assessment from Health Management Associates" and "Investigation of Manson Youth Institution" and documentation explaining what standard the DOC relies upon to define caseloads per week for mental health staff.

### Denial of DRCT's Unrestricted Phone Access to Residents in All of Defendants' Correctional Facilities

111.     In December 2022, DRCT received complaints that Defendants were denying incarcerated individuals with disabilities phone access to contact DRCT because DOC staff incorrectly believed that a DOC administrative directive that restricts inmates to two legal calls per month applied to DRCT.

112.     On January 10, 2023, DRCT requested that Defendant Quiros provide information about DRCT and its contact information to inmates and ensure that they have access to unrestricted and unrecorded phone calls with DRCT staff, as required under the P & A Acts and their implementing regulations.

113.     On February 6, 2023, Defendants, through their attorney, Attorney Lepore, stated at a meeting that the DOC could permit individuals with disabilities to make unrestricted and unrecorded calls over their tablets, including a message explaining what services DRCT

offered and its contact information.

114.    The DOC offered to email DRCT proposed language of what the tablet message sent to inmates would say for DRCT approval, which the DOC provided on February 16, 2023.

115.    On February 21, 2023, DRCT emailed DOC its edits to the proposed language for an inmate tablet message.

116.    Additionally, DRCT requested that the DOC propose a process to ensure that inmates with disabilities in the restricted housing unit (RHU) and on behavioral observation status (BOS) would receive unrestricted and unrecorded phone calls to DRCT, as DRCT learned from its investigation that inmates in the RHU and on BOS were denied access to tablets.

117.    On February 23, 2023, the DOC responded that they would look into the concern regarding inmates in RHU or on BOS.

118.    On March 8, 2023, DRCT received an email from the DOC stating that a different attorney, Nancy O'Brasky, was assigned to address DRCT outstanding access requests.

119.    That same day, DRCT requested, *inter alia*, an update on the status DRCT's proposed edits to the message to be placed on inmate tablets and a proposal as to how the DOC would ensure that inmates in the RHU and on BOS would receive unrestricted and unrecorded phone call access to DRCT. DRCT requested a response by 5 pm on Friday March 10, 2023.

120.    On March 10, 2023, the DOC responded via email that it was unable to respond by DRCT's requested time frame as the new attorney needed time to review DRCT's request for updates to inmate phone access.

121. On March 29, 2023, DRCT sent the DOC a letter via summarizing outstanding DRCT access requests including approval of inmate tablet message language and a plan to ensure phone access to RHU and BOS inmates, requesting a response by 5 pm Friday April 6, 2023.

122. The DOC, through Attorney O'Brasky, responded that, due to a family emergency, it could not respond by April 6, 2023.

123. In response, DRCT extended its deadline to 5 pm Friday April 14, 2023.

124. Although the DOC provided documents and information on April 14, 2023, this response included a response to DRCT's edited language for the inmate tablet message and a proposed plan to ensure phone access for RHU and BOS inmates.

125. On May 1, 2023, DRCT sent the DOC one more letter requesting, *inter alia*, compliance with unrestricted and unrecorded phone access to DRCT for all inmates.

126. To date, the DOC has not responded to DRCT's edits of its tablet message and has not proposed corrective action for unrestricted and unrecorded calls to DRCT for inmates in RHU or on BOS.

127. As a result of Defendants' denial of DRCT's access authority to have unrestricted phone access to all individuals with disabilities incarcerated at all of Defendants' correctional facilities, DRCT has, and continues to suffer irreparable harm at this denial impedes DRCT to fulfill its statutory duties under the PAIMI, PAIDD, PAIR and PATBI Acts.

128. At all times relevant to this action, Defendants were acting under color of state law.

129. Plaintiff DRCT has no adequate remedy at law.

## V. LEGAL CLAIMS

### Count I: Violation of the PAIMI Act and Its Implementing Regulations, and 42 U.S.C. § 1983

130.    Plaintiff incorporates by reference all previous paragraphs into this Count.

131.    As the designated protection and advocacy system for the state of Connecticut, Plaintiff DRCT is authorized to have access to facilities, including prisons, providing care or treatment to individuals with mental illness. 42 U.S.C. § 10805(a)(3).

132.    Plaintiff DRCT is authorized, and charged with the responsibility, to investigate complaints and probable cause beliefs of abuse and neglect of individuals with mental illness, as those terms are defined under the PAIMI Act and its implementing regulations. 42 C.F.R. § 51.42(b).

133.    Plaintiff DRCT is authorized to have reasonable unaccompanied access to public and private facilities and programs in the State which render care or treatment to individuals with mental illness, and to all areas of the facility which are used by residents or to which residents have access. 42 U.S.C. §10805( a)(3); 42 C.F.R. § 51.42(b).

134.    Plaintiff DRCT shall also have reasonable unaccompanied access to residents (including prisoners) at all times necessary to conduct a full investigation of an incident of abuse or neglect.  Residents include adults or minors who have legal guardians or conservators. 42 C.F.R. § 51.42(b) and (d).

135.    A "full investigation" is defined by the PAIMI regulations as one that is "based on a complaint or determination of probable cause and means access to facilities, clients, records authorized under [the PAIMI regulations] that is necessary for a P&A system to make a determination about whether an allegation of abuse or neglect is taking place or has taken place.  Full investigations may be conducted independently or in cooperation with other

agencies authorized to conduct similar investigations." 42 C.F.R. § 51.2.

136. Defendants are required to promptly provide Plaintiff DRCT with the records it is authorized to receive under the PAIMI Act and its implementing regulations. 42 U.S.C. §10805(a)(4); 42 U.S.C. §10806(a)(3)(b).

137. Defendants' failure and/or refusal to timely provide DRCT with access to the records, including the redacted sexual abuse investigations, the "staffing plan," and the spreadsheet with the names and inmate numbers of the victims of sexual assault, as requested by DRCT to investigate complaints it has received and its probable cause belief that persons incarcerated with mental illness are subject to systemic sexual abuse violates the PAIMI Act, 42 U.S.C. §§ 10805(a)(4), 10806(a)(3)(b); 42 C.F.R §51.41(a), and 42 U.S.C. § 1983.

138. Defendants' failure and/or refusal to timely provide DRCT with access to the records, including the staffing records and information, as requested by DRCT to investigate its complaints and probable cause belief that persons incarcerated with mental illness are being neglected with respect to the provision of mental health treatment violates the PAIMI Act, 42 U.S.C. §§ 10805(a)(4), 10806(a)(3)(b); 42 C.F.R §51.41(a), and 42 U.S.C. § 1983.

139. Defendants' failure and/or refusal to allow individuals with serious mental illness to have unrestricted and unrecorded phone access to DRCT violates the PAIMI Act, 42 U.S.C. §§ 10805, 42 C.F.R. §§51.42(b), 51.42(d), and 42 U.S.C. § 1983.

140. Defendants have acted under color of state law to deprive DRCT of federal rights under the PAIMI Act.

141. Defendants' violations of the PAIMI Act and its implementing regulations unlawfully frustrates and interferes with DRCT's federal mandate to protect and advocate on

behalf of individuals with disabilities in Connecticut; investigate allegations of abuse and neglect; provide legal advocacy for people with disabilities; determine whether an investigation by DRCT should be conducted; and determine whether corrective is need.

142.    Defendants' violations of the PAIMI Act and its implementing regulations complained of herein have, and continue to, cause Plaintiff DRCT irreparable harm.

143.    DRCT is authorized to pursue administrative, legal and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment pursuant to 42 U.S.C. §10805(a)(1)(B).

144.    Plaintiff DRCT is entitled to relief under 42 U.S.C. § 10805(a)(4)(A), 42 C.F.R. §51.41(b)(1), and 42 U.S.C. §§ 1983.

145.    Plaintiff DRCT is entitled to receive its attorneys' fees and costs in this action pursuant to 42 U.S.C.§1988.

### Count II: Violation of the PAIDD Act and Its Implementing Regulations, and 42 U.S.C. § 1983

146.    Plaintiff incorporates by reference all previous paragraphs into this Count.

147.    Defendants are required to provide Plaintiff with unaccompanied access, including phone access, to inmates with intellectual and/or other developmental disabilities requesting assistance due to their disability. 42 U.S.C. § 15043(a)(H) and 45 C.F.R. § 1326.27(b).

148.    Defendants' refusal and failure to provide inmates with unrestricted and unrecorded access to call DRCT violates the PAIDD Act and its implementing regulations. 42 U.S.C. § 15043(a)(H) and 45 C.F.R. § 1326.27(b), and 42 U.S.C. §§ 1983.

149.    Defendants have acted under color of state law to deprive DRCT of federal

rights under the PAIDD Act.

150. Defendants' violation of the PAIDD Act and its implementing regulations frustrates and interferes with DRCT's ability to fulfill its federal mandate to provide protection and advocacy services, including monitoring, investigating, and remediating abuse and neglect of individuals with developmental disabilities incarcerated in Defendants' correctional facilities.

151. Defendants' violations of the PAIDD Act and its implementing regulations complained of herein have, and continue to, cause Plaintiff DRCT irreparable harm.

152. Plaintiff DRCT is authorized to pursue administrative, legal and other appropriate remedies to ensure the protection of individuals with developmental disability entitled to contact DRCT pursuant to 42 U.S.C. § 15043(a)(H).

153. Plaintiff DRCT is entitled to relief under 42 U.S.C. §15043(a)(H), 45 C.F.R. § 1326.27(b), and 42 U.S.C. § 1983.

154. Plaintiff DRCT is entitled to receive its attorneys' fees and costs in this action pursuant to 42 U.S.C.§1988.

**Count III: Violation of the PAIR Act and Its Implementing Regulations, and 42 U.S.C. § 1983**

155. Plaintiff incorporates by reference all previous paragraphs into this Count.

156. Defendants' refusal and failure to provide inmates with unrestricted and unrecorded phone calls to DRCT violates the PAIR Act and its implementing regulations. 29 U.S.C. § 794e and 45 C.F.R. § 1326.27(b), and 42 U.S.C. §1983. The PAIR Act adopts the DD Act regulations. 29 U.S.C. § 794e(m)(1).

157. Defendants are required to provide Plaintiff with unaccompanied access to

inmates requested assistance due to their disability. 42 U.S.C. § 15043(a)(H) and 45 C.F.R. § 1326.27(b).

158.     Defendants have acted under color of state law to deprive DRCT of federal rights under the PAIR Act.

159.     Defendants' violation of the PAIR Act and its implementing regulations frustrates and interferes with DRCT's ability to fulfill its federal mandate to provide protection and advocacy services, including monitoring, investigating and remediating abuse and neglect of individuals with disabilities incarcerated in Defendants' correctional facilities.

160.     Defendants' violations of the DD Act and its implementing regulations complained of herein have, and continue to, cause Plaintiff DRCT irreparable harm.

161.     DRCT is authorized to pursue administrative, legal and other appropriate remedies to ensure the protection of individuals with developmental disability entitled to contact DRCT pursuant to 42 U.S.C. § 15043(a)(H).

162.     DRCT is entitled to relief under 29 U.S.C. § 794e(m)(1), 45 C.F.R. § 1326.27(b), and 42 U.S.C. § 1983.

163.     Plaintiff DRCT is entitled to receive its attorneys' fees and costs in this action pursuant to 42 U.S.C. §1988.

### Count VI: Violation of the PATBI Act and Its Implementing Regulations, and 42 U.S.C. § 1983

164.     Plaintiff incorporates by reference all previous paragraphs into this Count.

165.     Defendants' refusal and failure to provide inmates with unrestricted and unrecorded phone calls to DRCT violates the PATBI Act and its implementing regulations. 42 U.S.C. § 300-53 and 45 C.F.R. § 1326.27(b), and 42 U.S.C. § 1983.  The PATBI Act adopts

and incorporates therein, all of the authorities of PAIDD Act. 42 U.S.C.§§300-53(m)(2), 300-53(k).

166. Defendants are required to provide Plaintiff with unaccompanied access to inmates requested assistance due to their disability. 42 U.S.C. § 15043(a)(H) and 45 C.F.R. § 1326.27(b).

167. Defendants have acted under color of state law to deprive DRCT of federal rights under the PATBI Act.

168. Defendants' violation of the PATBI Act and its implementing regulations frustrates and interferes with DRCT's ability to fulfill its federal mandate to provide protection and advocacy services, including monitoring, investigating and remediating abuse and neglect of individuals with traumatic brain injuries incarcerated in Defendants' prison facilities.

169. Defendants' violations of the PATBI Act and its implementing regulations complained of herein have, and continue to, cause Plaintiff DRCT irreparable harm.

170. DRCT is authorized to pursue administrative, legal and other appropriate remedies to ensure the protection of individuals with developmental disability entitled to contact DRCT pursuant to 42 U.S.C. § 15043(a)(H).

171. DRCT is entitled to relief under 42 U.S.C. § 300-53(m)(2), 45 C.F.R. § 1326.27(b), and 42 U.S.C. § 1983.

172. Plaintiff DRCT is entitled to receive its attorneys' fees and costs in this action pursuant to 42 U.S.C. § 1988.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests that this Court grant the following relief:

a.  A declaratory judgment that Defendants has violated DRCT's rights under the DD Act, the PAIMI Act, the PAIR Act, PATBI, and 42 U.S.C. § 1983;

b.  A declaratory judgment that Defendants has an obligation to assure that the access rights granted to the Plaintiff by the P&A Acts are fully and uniformly implemented;

c.  Preliminarily and permanently enjoin Defendants to provide timely and complete responses to all outstanding and future records requests made by DRCT pursuant to its federally mandated P&A authority;

d.  An award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; and,

e.  Any further relief that the Court deems appropriate.

DATED:  May 12, 2023

Respectfully submitted:

 _/s/James P Welsh_____
James P. Welsh, (Fed Bar # ct 5240)
Disability Rights Connecticut
75 Charter Oak Avenue, Ste. 1-101
Hartford, CT 06106
(860) 469-4445
(860) 296-0055 (facsimile)
James.Welsh@disrightsct.org

Deborah A. Dorfman (CT Juris # CT Juris No. 442946) (*pro hac vice* application forthcoming)
 Disability Rights Connecticut
75 Charter Oak Avenue, Ste. 1-101
Hartford, CT 06106
(860) 469-4463
(860) 296-0055 (facsimile)
deborah.dorfman@disrightsct.org